19MAG 8116

ORIGINAL

Approved: _____
NI QIAN / ANDREW A. ROHRBACH
Assistant United States Attorney

Before: THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - X
                                      :
UNITED STATES OF AMERICA              :   SEALED COMPLAINT
                                      :
                                      :   Violations of
    - v. -                            :   18 U.S.C. §§ 1343
                                      :   1349, 1957, and 2.
HICHAM KABBAJ,                        :
                                      :   COUNTY OF OFFENSE:
              Defendant.              :   NEW YORK
                                      :
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

SCOTT McNEIL, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office for the Southern District of New York ("USAO"), and charges as follows:

COUNT ONE
(Wire Fraud)

1. From at least in or about August 2015 up to and including at least in or about May 2019, in the Southern District of New York and elsewhere, HICHAM KABBAJ, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, in order to induce a company ("Company-1") to pay fraudulent invoices for goods and service that were not provided, and in connection therewith and in furtherance thereof, KABBAJ transmitted and caused to be transmitted interstate electronic mail, telephone calls, and wire transfers of funds.

(Title 18, United States Code, Sections 1343, 1349 and 2.)

## COUNT TWO
(Transactions in Criminally Derived Property)

2. From at least in or about August 2015 up to and including at least in or about May 2019, in the Southern District of New York and elsewhere, HICHAM KABBAJ, the defendant, knowingly engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the wire fraud offense charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1957 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I am a Special Agent for the USAO. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my examination of various reports and records, and on my conversations with witnesses. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my review of records from an international internet company ("Company-1"), I have learned the following:

   a. In or about May 2015, HICHAM KABBAJ, the defendant, joined Company-1 as a senior manager in the information technology ("IT") department in Company-1's offices in New York, New York.

   b. In or about August 2015, Company-1 began receiving invoices from a company called Interactive Systems, which purported to be a third-party vendor providing IT products and services. For example:

      i. On an invoice dated August 13, 2015, the description read: "Setup and Base fee for August 2105 [sic]."

2

    ii.  On an invoice dated September 24, 2015, the description read: "Base fee for September 2105 [sic]."

    iii.  On an invoice dated October 9, 2015, the description read: "Base fee for October 2105 [sic]."

    iv.  On an invoice dated November 4, 2015, the description read: "Base fee for November 2015," and "Base fee for December 2015."

    v.  An invoice dated March 20, 2018 provided for the purchase of two firewall devices, as well as the associated software, from a manufacturer ("Manufacturer-1"), and the invoice included the model and serial numbers.

    vi.  An invoice dated February 13, 2019 provided the purchase of additional firewall devices with the same make and model as the firewall devices described in the March 20, 2018 invoice.

    vii.  An invoice dated March 10, 2019 provided for the purchase of sixteen servers from a manufacturer ("Manufacturer-2"), and the invoice included the model and part number for sixteen servers, but no serial numbers.

    viii.  An invoice dated April 17, 2019 provided for the purchase of ten additional servers with the same make, model, and part number as the servers described in the March 10, 2019 invoice, also with no serial numbers.

   c. From in or about August 2015 through in or about April 2019, Interactive Systems submitted to Company-1 approximately 52 invoices. Four of these invoices were submitted in Word document format, and the metadata for these four invoices identified KABBAJ as the author.

   d. Each invoice from Interactive Systems was addressed to KABBAJ.

   e. According to Interactive Systems invoices, the mailing address for Interactive Systems was a post office box in New York, New York (the "Interactive Systems PO Box").

   f. Company-1 paid Interactive Systems by wiring the invoiced amounts to a bank account in the name of Interactive Systems (the "Interactive Systems Bank Account") at a national bank ("Bank-1").

g. Interactive Systems submitted two W-9 forms to Company-1 with an Employer Identification Number ("EIN")

5. Based on my conversation with an employee at Company-1 ("Employee-1"), I have learned the following:

a. Employee-1 is a senior manager in the IT department at Company-1. Since at least in or about late 2016, Employee-1 has been in charge of data centers at Company-1, including the purchasing of equipment for these data centers. Employee-1 reported directly to HICHAM KABBAJ, the defendant, while KABBAJ was employed at Company-1.

b. Though firewall devices and servers are the type of equipment that would typically be used in data centers, Employee-1 did not ever purchase or become aware of the purchase of the firewall devices described in the Interactive Systems invoices dated March 20, 2018 and February 13, 2019, nor the servers described in the Interactive Systems invoice dated April 17, 2019.

c. Employee-1 further stated that though Company-1 does use firewall devices from Manufacturer-1, Company-1 uses a different model than that described on the March 20, 2018 and February 13, 2019 invoices. Moreover, Employee-1 stated that the format of the serial numbers listed on the March 20, 2018 and February 13, 2019 invoices was inconsistent with the format of known serial numbers for Manufacturer-1 firewall devices.

d. Employee-1 further stated that Company-1 is unlikely to have purchased the Manufacturer-2 servers described in the April 17, 2019 invoice based on Company-1's needs at the time.

6. Based on review of notes of a conversation with an employee at Company-1 ("Employee-2"), I have learned the following:

a. Employee-2 is a senior manager of technological infrastructure at the parent company of Company-1 (the "Parent Company"). As such Employee-2 is in charge of all the data centers used by subsidiaries of the Parent Company, including Company-1, and has been in charge of all the data centers of such subsidiaries, including Company-1, since they opened in or about 2016.

b. Employee-2 stated that no one from Interactive Systems went to any of the data centers that services the Parent

4

Company and Company-1 from in or about January 2019 through in or about June 2019.

  c. Employee-2 further stated that each new vendor that wishes to gain access to the data centers would need to seek approval from him. However, to date, he is unaware of a vendor called Interactive Systems.

  7. Based on my review of Bank-1 records for the accounts in the name of "Hicham Kabbaj" and Interactive Systems, and my conversations with a Bank-1 employee, I learned the following:

  a. The Interactive Systems Account has been opened since at least December 2016. The only signatory on the Interactive Systems account is HICHAM KABBAJ, the defendant. The mailing address for the Interactive Systems Account is at a location in New York, New York.

  b. From in or about December 2016 through in or about July 2019, the only deposits into the Interactive Systems account, other than interest payments, have come from Company-1, and these deposits do not include regular salary or bonuses from Company-1 for KABBAJ.

  c. From in or about December 2016 through in or about July 2019, the only withdrawals from the Interactive Systems account, other than maintenance fees, are transfers to two accounts at Bank-1 held in the name of KABBAJ ("Kabbaj Account-1" and "Kabbaj Account-2"). There are no withdrawals to pay other vendors or individuals for goods or services, such as the purchase of firewall devices or servers.

  d. From in or about December 2016 through in or about July 2019, the Interactive Systems account received a total of approximately $4,500,921.44 in deposits from Company-1.

  e. Often, within days of a deposit from Company-1 in the Interactive Systems account, a nearly equivalent amount would be transferred to Kabbaj Account-1 or Kabbaj Account-2. For example:

  i. On or about May 11, 2018, Company-1 deposited approximately $568,248.00 into the Interactive Systems account, which is the same amount requested in the Interactive Systems Invoice dated March 20, 2018. On or about May 14, 2018, approximately $568,000.43 was transferred to Kabbaj Account-2.

5

     ii. On or about December 13, 2018, Company-1 deposited approximately $34,248.00 into the Interactive Systems account, which is the same amount requested in the Interactive Systems Invoice dated December 3, 2018. On or about December 24, 2018, approximately $34,033.29 was transferred to Kabbaj Account-1.

     iii. On or about March 8, 2019, Company-1 deposited approximately $548,048.00 into the Interactive Systems account, which is the same amount requested in the Interactive Systems Invoice dated February 13, 2019. On or about March 15, 2019, approximately $548,033.42 was transferred to Kabbaj Account-2.

     iv. On or about May 3, 2019, Company-1 deposited approximately $431,360.00 into the Interactive Systems account, which is the same amount requested in the Interactive Systems Invoice dated April 17, 2019. On or about May 6, 2019, approximately $400,000 was transferred to Kabbaj Account-2. Also on or about May 6, 2019, approximately $31,347.85 was transferred to Kabbaj Account-1.

    8. Based on my conversation with a Special Agent with the United States Postal Inspection Service Office of the Inspector General, I learned that the Interactive Systems PO Box is registered to HICHAM KABBAJ, the defendant, at the same address where Bank-1 mails Kabbaj Account-1 and Kabbaj Account-2 statements.

    9. Based on my conversation with a Special Agent with the Internal Revenue Service, I learned that, since at least August 2015, no form W-2 or 1099 was ever issued under the Interactive Systems EIN, and Interactive Systems never filed a tax return under the Interactive Systems EIN.

    10. Based on my conversations with a representative of Manufacturer-1, I learned that Interactive Systems is not an authorized dealer of Manufacturer-1's products.

    11. Based on my review of Manufacturer-2's website, which lists authorized dealers for Manufacturer-2's products, I learned that Interactive Systems is not an authorized dealer of Manufacturer-2's products.

    12. Based on my conversations with Employee-1 and Employee-2, I know that Company-1's data centers, including its servers, are located outside New York and Utah. Based on my review of Company-1 records, I know that at least one email from

Interactive Systems attaching the Interactive Systems invoice, dated March 20, 2018, which was later paid by Company-1, was sent to Company-1 email accounts. I further know based on my review of Company-1 records that this email was accessed by a Company-1 employee working in Utah, and by HICHAM KABBAJ, the defendant, who worked in Company-1 offices located in New York, New York at the time.

    WHEREFORE, deponent respectfully requests that an arrest warrant be issued for HICHAM KABBAJ, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
Scott McNeil
Special Agent
United States Attorney's Office for the
Southern District of New York

Sworn to before me this
28th day of August, 2019

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK